**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**CIVIL ACTION NO.** 3:26-cv-812-GNS

**OLIVIA TIPTON**
3601 Alexander Drive
LaGrange, KY 40031

**and**

**TIMOTHY TIPTON** **PLAINTIFFS**
3601 Alexander Drive
LaGrange, KY 40031

**v.**

**OLDHAM COUNTY BOARD OF EDUCATION**
6165 W. Highway 146
Crestwood, KY 40014

**and**

**RICHARD PARROTT**
6165 W. Highway 146
Crestwood, KY 40014

**and**

**BETHONY KEIL**
6165 W. Highway 146
Crestwood, KY 40014

**and**

**JENNIFER HALLAS**
6165 W. Highway 146
Crestwood, KY 40014

**and**

**CLAUDETTE HERALD** **DEFENDANTS**
6165 W. Highway 146
Crestwood, KY 40014

**SERVE ALL DEFENDANTS**
**VIA CERTIFIED MAIL:**
6165 W. Highway 146
Crestwood, KY 40014

---

**COMPLAINT AND JURY DEMAND**

---

Now come Plaintiffs, Olivia Tipton and Timothy Tipton, by and through counsel, and for their Complaint against Defendants, Oldham County Board of Education; Richard Parrott; Bethony Keil; Jennifer Hallas; and Claudette Herald, hereby states as follows:

**THE PARTIES**

1. Olivia Tipton is a citizen of the Commonwealth of Kentucky who currently resides at 3601 Alexander Drive, LaGrange, Kentucky 40031.

2. Timothy Tipton is a citizen of the Commonwealth of Kentucky who currently resides at 3601 Alexander Drive, LaGrange, Kentucky 40031.

3. Defendant, Oldham County Board of Education, is the body politic and corporate charged with the operation of the Oldham County School District, including, but not limited to, Buckner Elementary School.

4. Defendant, Richard Parrott, is a citizen and resident of the Commonwealth of Kentucky. Richard Parrott is, and was at all times relevant hereto, Principal of Buckner Elementary School and Chair of the Buckner Elementary School-Based Decision Making Council. Principal Parrott is sued in his individual capacity for actions taken under color of state law.

5. Defendant, Bethony Keil, is a citizen and resident of the Commonwealth of Kentucky. Bethony Keil is, and was at all times relevant hereto, the 504 Coordinator and Assistant

Director of Exceptional Child Services for the Oldham County School District. Ms. Keil is sued in her individual capacity for actions taken under color of state law.

6. Defendant, Jennifer Hallas, is a citizen and resident of the Commonwealth of Kentucky. Jennifer Hallas is, and was at all times relevant hereto, an administrator in the District's Exceptional Child Services department. Ms. Hallas served as Assistant Director of Exceptional Child Services through June 30, 2025, and thereafter as Director of Specialized Academic Programming for the District. Ms. Hallas is sued in her individual capacity for actions taken under color of state law.

7. Defendant, Claudette Herald, is a citizen and resident of the Commonwealth of Kentucky. Claudette Herald is currently the Superintendent of the Oldham County School District and has been since the Summer of 2025. Superintendent Herald is sued in her individual capacity for actions taken under color of state law.

**JURISDICTION AND VENUE**

8. This Court may exercise its general personal jurisdiction over Defendants, as each Defendant is a citizen of the Commonwealth of Kentucky and the acts complained of herein occurred in this Commonwealth.

9. Pursuant to 28 U.S.C. 1331, this Court has subject matter jurisdiction as this action arises under the Constitution, laws, or treaties of the United States.

10. Pursuant to 28 U.S.C. 1367(a), this Court may exercise its supplemental jurisdiction over any state law claims as they arise from the same nucleus of operative fact as the federal questions presented herein.

11. The facts and circumstances of this case occurred in Oldham County, Kentucky and Defendants are located in Oldham County, Kentucky. Accordingly, this Court is the appropriate venue for this action.

12. This action against the Oldham County Board of Education is not barred by the Eleventh Amendment to the United States Constitution based on the Supreme Court's decision in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

## BACKGROUND

13. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

14. Within the Oldham County School District, the Oldham County Board of Education ("School Board" or "the District") operates Buckner Elementary School located at 4307 Brown Boulevard, LaGrange, KY 40031.

15. Timothy Tipton and Olivia Tipton are husband and wife. Olivia and Timothy are the natural parents and legal guardians of three (3) children: H.T., age 13; H.T., age 11; and H.T., age 9.

16. Each of the children of Olivia and Timothy attended or are currently attending Buckner Elementary School.

17. Olivia and Timothy's middle child, H.T., age 11, attended and graduated from Buckner Elementary, and is now attending South Oldham Middle School as a sixth grader.

18. H.T., age 11, has been diagnosed with Anxiety and Attention-Deficit/Hyperactivity Disorder (Combined Type), commonly referred to as "ADHD."

19. As such, H.T., age 11, is a qualified individual with a disability under Section 504 of the Rehabilitation Act of 1973 and has a Section 504 Plan.

20. Olivia and Timothy's youngest child, H.T., age 9, currently attends Buckner Elementary as a fourth grader.

21. H.T., age 9, has been diagnosed with a speech impairment and also has ADHD.

22. As such, H.T., age 9, is entitled to special education services under the Individuals with Disabilities Act ("IDEA"); H.T., age 9, also has a Section 504 Plan.

23. Olivia Tipton has also been diagnosed with ADHD, and has informed Defendant of said disability on numerous occasions.

24. Because Olivia and Timothy's children are students with disabilities, the children are entitled to specialized educations services under the IDEA and/or to educational accommodations under Section 504 of the Rehabilitation Act.

25. However, between 2021 and the present day, the District has routinely failed to properly implement or adhere to these services and accommodations, which amounts to discrimination against Olivia and Timothy's children on the basis of their disability.

26. As a result, between 2021 and the present day, Olivia and Timothy have engaged in numerous Board and Council meetings, conferences, and phone calls with the District in an effort to remedy the discrimination experienced by their children.

27. Despite their advocacy, the District has done nothing to remedy the discrimination endured by H.T., age 11, and H.T., age 9, and has actively resisted Plaintiffs' efforts to protect their children.

28. The facts alleged herein describe the discriminatory and retaliatory practices of the District in connection with Olivia and Timothy Tipton's advocating for their children's civil rights.

29. The facts set forth below, beginning with the Board of Education meeting on October 13, 2025, and continuing through the present, are each independently actionable and fall

within the applicable limitations period. The allegations preceding October 13, 2025, are pleaded as background and evidence of the Defendants' notice, knowledge, motive, and pattern of conduct.

## STATEMENT OF FACTS

30. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

31. On January 23, 2024, Olivia and Timothy attended the first Section 504 Meeting in connection with their youngest daughter, H.T., age 9's, ADHD, for which she had already been prescribed medication.

32. At that meeting, Buckner Elementary's 504 Coordinator, Heather Dale, indicated her belief that H.T., age 9, did not qualify for a 504 Plan because she did not have "symptoms of ADHD that were observable," and that these accommodations were only appropriate for students with "true ADHD."

33. Offended, and noting the legally impermissible standard upon which Ms. Dale determined H.T., age 9's, eligibility, Olivia contacted Bethony Keil, the 504 Coordinator for the District, who wrote that she would "share this information with our director's team (Niki Brown, Director of Exceptional Child Services and Jennifer Hallas, Assistant Director)."

34. On May 20, 2024, at a regular meeting, Buckner Elementary's School-Based Decision Making Council ("SBDM Council") voted on and approved the implementation of a "Waterfall Drop Schedule" for the fourth-grade students.

35. Under this schedule, on any given day, classes were to be taught in a different order, for different lengths of time, or sometimes not at all.

36. The SBDM Council adopted this schedule without conducting a disability-impact analysis.

37. Upon information and belief, no other school or grade level in the entire school district had a comparable schedule. Buckner's fifth graders, for example, had two teachers.

38. The Waterfall Drop Schedule discriminated against students with disabilities.

39. The Waterfall Drop Schedule rotated fourth-grade students between five teachers in five different classrooms but provided only four instructional blocks each day. One class was therefore "dropped" every day, and the next day would begin with the class that had been dropped, shifting the order of classes daily and sacrificing full class periods for entire subjects at least once a week.

40. Factoring in rotating specials (art, music, gym, etc.) and frequent shortened day schedules, students could go months without any two school days looking the same under the Waterfall Drop Schedule.

41. The schedule also added a "literacy lab" class to the fourth grade only, which displaced the daily "What I Need" ("WIN") period—the structured time in which other grades at Buckner received individualized instruction and during which accommodations such as extended time could be delivered without missing new instruction.

42. In practice, fourth graders received no WIN time. At H.T., age 11's, Section 504 meeting on October 18, 2024, her teacher described literacy lab as "essentially like [WIN] time because that's how we used to use [WIN] time," and a District participant stated that the District was "accommodating her 504 by putting in literacy lab."

43. The schedule placed its heaviest demands on the very functions that ADHD impairs: attention, organization, working memory, and managing transitions. Students were released to change classes without adult support; had no visual schedule or list of required materials after their first class; had to carry all of their materials for the day without a bag; could

not retrieve forgotten items once class began; and had to follow different rules in each of the five classrooms. Lunch and break periods were regularly consumed by transitions.

44. Because of these features, the accommodations in H.T., age 11's, Section 504 Plan, that depend on consistency and predictability, including front-loading of assignments and assessments, repeated directions, scheduled breaks, and extended time, could not be reliably delivered under the schedule.

45. Olivia and Timothy reasonably and in good faith believed the schedule discriminated against H.T., age 11, on the basis of her disability, and expressed that belief to the District in writing. On September 26, 2024, Olivia wrote to the Assistant Superintendent, copying Ms. Keil, that the schedule's combined effects "disproportionally impact[]" children with disabilities, and that "there is a fundamental lack of understanding on what ADHD is and how to support it at Buckner Elementary."

46. The District later acknowledged the problem. On January 11, 2025, following a call with Olivia and Timothy, Principal Parrott sent them draft replacement schedules, writing, "This will eliminate the drop schedule," and the Council replaced it in the middle of the school year.

47. In the months following its adoption and leading into the 2024-2025 school year, Olivia and Timothy voiced their concerns about the discriminatory nature of the Waterfall Drop Schedule in light of H.T., age 11's, disability.

48. At various times, Olivia and Timothy raised their concerns as to the discriminatory nature of the schedule to various persons employed by the District, including:

- Richard Parrott, Principal, Buckner Elementary School;
- Bethony Keil, 504 Coordinator and Asst. Dir. of Exceptional Child Services, The District;

- Dylan Smith, Assistant Superintendent, The District;
- Niki Brown, Director of Exceptional Child Services, The District;
- Elizabeth Dant, Elementary Level Director, The District; and
- Brent Deaves, Assistant and Interim Deputy Superintendent, The District.

49. Despite raising these concerns on numerous occasions, nothing was ever done to address them.

50. Even after school began, and H.T., age 11, was actually subjected to the adverse and discriminatory effects of the new schedule, which Olivia and Timothy documented and raised to the District, nothing was ever done to remedy or otherwise mitigate the discrimination endured by H.T., age 11.

51. On September 27, 2024, after Olivia had asked whether a school psychologist had reviewed the fourth-grade schedule, Ms. Keil recommended internally that the District select their own reviewer and that "this person remain anonymous to the parent. My concern with this is that it will likely escalate the parents further regardless of the findings."

52. On November 6, 2024, in response to the ongoing disability discrimination and retaliation experienced by H.T., age 11, Olivia Tipton and Timothy Tipton sent a formal *Gebser* Letter[1] to District Superintendent, Jason Radford, and each member of the School Board, individually.

53. Specifically, the *Gebser* Letter notified the District of Buckner Elementary's discrimination against H.T., age 11, for its failure to properly implement or adhere her Section 504 accommodations; the adoption of a developmentally inappropriate fourth-grade schedule; and the

[1] Named after the Supreme Court decision in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) where the Court held that a school district could be held liable for damages under Title IX, but only if the district had "actual notice" and was "deliberately indifferent" to the underlying violation. *See Horner ex rel. Horner v. Ky. High Sch. Athletics Ass'n.*, 206 F.3d 685, 691 (6th Cir. 2000).

unauthorized actions of the Buckner Elementary School-Based Decision Making Council ("SBDM Council") in connection therewith.

54. In connection with their *Gebser* Letter, Olivia and Timothy requested that the matter be placed on the agenda for the upcoming School Board meeting to be held on November 18, 2024.

55. The District's response to the *Gebser* Letter was prepared and signed by Mr. Brent Deaves, who held the title of Assistant Superintendent, Interim Deputy Superintendent, and SBDM Coordinator for the District.

56. Mr. Deaves prepared and signed the response on November 11, 2024, which was postmarked November 13, 2024, and received by Olivia and Tim on or about November 15, 2024.

57. On November 14, 2024, before receipt of the District's response, Superintendent Radford stated, "We have investigated your concerns that you outlined below. I am cc'ing our board members because you sent each one a certified letter as we follow policy when addressing concerns such as these. We mailed a follow up letter to you that you should be receiving soon of our responses."

58. As to the School Board agenda request, Superintendent Radford stated on November 15, 2024:

> This topic will not be on the agenda for board discussion. We utilize board policy to guide our processes. This is not a topic that should be considered for board discussion due to confidentiality and your request for investigation. Please keep in mind that board meetings are open public meetings which would impact confidentiality and any investigative process. The board is aware of your concerns as I have stated previously. I see you contacted Mr. Deaves. He will respond as quickly as he can to your request.

59. From his "investigation" in response to the *Gebser* Letter, Mr. Deaves concluded, without interviewing Olivia and Timothy, and relying exclusively on "discussions with Mr. Parrott

[Principal] and Ms. Dant [Elementary Level Director]," and on H.T., age 11's, academic performance ("your daughter continues to perform at a high level, many times outperforming like age peers"), that no discrimination occurred.

60. The same day she received Mr. Deaves' letter, Olivia Tipton emailed Mr. Deaves, stating: "We disagree with your findings that no discrimination has occurred. We would like to appeal this decision. Can you please provide the necessary information for filing an appeal?"

61. After ten (10) days with no response, Olivia Tipton again emailed Mr. Deaves: "We are still awaiting your response. Thank you!"

62. On November 26, 2024, Mr. Deaves responded, "I did receive your email stating that you disagreed with our findings. As presented in your 504 meetings and our previous conversations, you have the right to file a complaint per our 504 Parent Rights which are attached."

63. On December 6, 2024, based on the 504 Parent Rights provided by Mr. Deaves, Olivia Tipton emailed Superintendent Radford about exercising her right to appeal Mr. Deaves decision, stating:

> We are attempting to exercise our rights outlined in the parent/student rights. Those rights say we have the right to file a local grievance, which allows for appeals of decisions up to the school board. We have reached out to your directly to give you the opportunity to oversee and hear our concerns. Would you like to consider our concerns or is it the districts (sic) position that Mr. Deaves' response is that of the superintendent/ designee? As we stated in our previous emails, we would like to appeal that decision and are requesting to be advised on how to complete that appeal to get it to the appropriate level. Our grievances extend beyond what can be covered via the 504 process as they involve things such as the SBDM Council.

64. On December 11, 2024, Radford stated, "I have reviewed your most recent request and others. We have followed our policies and procedures in making every effort to address your concerns. If you would like to schedule a phone call with me, I would be happy to discuss further."

65. On December 17, 2024, Olivia and Timothy had said phone call with Superintendent Radford where they again reiterated the unresolved discrimination and governance failures by the District, and also the defects in the investigation and response to the *Gebser* Letter.

66. Notably, during a subsequent phone call on December 20, 2024, between Olivia and Timothy, Superintendent Radford, and Principal Parrott, Principal Parrott, noting the severity of the conduct directed at the Tipton family, stated that he would not feel comfortable remaining at the school if he had been the target of what the Tipton family was experiencing.

67. On January 8, 2025, the Parents had another phone call with Superintendent Radford, once again emphasizing the discriminatory nature of the fourth-grade schedule and reiterating that the schedule's adoption was unlawful and incompatible with Section 504.

68. During both conversations with Superintendent Radford, he requested that Olivia and Timothy recount each of their grievances with specificity, even though they had been communicating their grievances to the District over the preceding three (3) years.

69. As a result, both conversations were incredibly long in duration, spanning four or five hours in total.

70. On a January 10, 2025, phone call between Olivia and Timothy, Principal Parrott, and Elementary Level Director, Elizabeth Dant, Olivia Tipton reiterated Principal Parrott's statements that he would "not feel comfortable" remaining at the school.

71. Principal Parrott did not deny making this statement, but deflected, stating, "I would not call that retaliation. I would call that just inquiring."

72. On that same call, Principal Parrott described the SBDM Council discussion on November 18, 2024, of Olivia's placement on an SBDM Committee: "That question about the motives were: 'Is it just to change the schedule for one kid or for all kids? … are the motives self-

serving? Or are they in the best interest of all kids?'" Principal Parrott stated that the vote was taken by "a gesture of hands."

73. On January 27, 2025, Olivia Tipton publicly addressed the Buckner Elementary SBDM Council at a regular council meeting regarding her governance, scheduling, and disability-related concerns.

74. At that meeting, Principal Parrott presented an "update" on the new fourth grade schedule, replacing the discriminatory Waterfall Drop Schedule in the middle of the year, and asking the Council to take it under advisement. The Council took no vote.

75. The SBDM Council did not approve a fourth grade schedule until a special meeting called on Friday, February 7, 2025, where it first amended the schedule and then approved the amended version. The new schedule took effect the following Monday, February 10, 2025, and dramatically worsened H.T., age 11's, existing schedule and disability-related struggles.

76. On January 31, 2025, Olivia and Timothy contacted the Members of the Board of Education, including Member Adam Springer, seeking intervention as to the proposed new schedule and stating:

> Buckner is moving ahead with major schedule changes that will worsen our situation. Those changes are set to go into effect on February 6, 2025. Buckner is implementing these changes by using false pretenses to circumvent SBDM approval. The change itself is being perceived as further retaliation because rather than addressing our concerns about the schedule, it is being changed to make matters worse for our child.

77. Mr. Springer declined to comment due to "legal considerations" on February 5, 2025.

78. On February 4, 2025, O.T. emailed School Board Chair, Carly Clem, to report concerns of retaliation in connection with the proposed new schedule.

79. In response that same day, Ms. Clem stated:

> I did meet with Dr. Radford today and it sounds like the schedule changes at Buckner will be moving forward. He did say he offered a district school change, should you want to find a better option within the district.
>
> I'm happy to help where I can, but am also somewhat limited, as the SBDM decides on those schedule changes.
>
> I see your outline below about the SBDM violations, but have you been to an SBDM meeting to express your concerns?

80. O.T.'s response to Ms. Clem reiterated the extent of the discrimination and retaliation experienced by H.T., age 11, and emphasized that the School Board's responsibility to cure these violations where the Superintendent has failed to do so.

81. Ms. Clem then forwarded O.T.'s response to Superintendent Radford, who stated: "Thank you. She is entitled to her opinion."

82. That same day, during a meeting of the SBDM Climate Committee, of which O.T. was a member, the Committee discussed ways to minimize instructional loss affecting "Tier 3" students, i.e., those in need of more individualized educational support.

83. Pursuant to this discussion, the committee reached an agreement that Tier 3 students should not be pulled from instructional time. O.T. then identified that, under the current schedule, those Tier 3 students were losing fifteen (15) minutes of instructional time not including classroom transition time.

84. Contra to the position and consensus reached by the Committee, Julie Brown responded: "So, that … I mean that is … with, with … if you want a percentage of Tier kids … Tier 3 children and what that impacts, it impacts less than 5% of our students."

85. In clarifying her statements, Ms. Brown indicated that, "They are not getting pulled out during instructional time, they are getting pulled out during workshop time. … the last 10 minutes of that instructional block, but the instruction is not happening at that time."

86. In February 2025, after Olivia had objected to her grievances being expressly listed in H.T., age 11's, 504 Plan, which could be viewed by teachers, Ms. Keil responded that the notes would be removed from the 504 Plan but that "the notes will be included in the student's educational records."

87. Interestingly, the District's own Grievance Procedure requires that "[a]ll attendant records shall be filed in the office of the Principal and/or Superintendent and shall be considered private information and separate from the student's educational records."

88. On March 4, 2025, the Parents made an Open Records Request to Superintendent Radford. In doing so, the Parents expressly asked, "Can you confirm that information pertaining to our minor child, such as her name and her student number will be redacted from any information released to the public on this request?"

89. In response on March 18, 2025, District Counsel, Emily Vessels (now "Emily Vessels Wade"), informed the Parents that "the subject matter and frequency of [their] communication with the District and school staff has amounted to harassment," and requested that "any further communication not related to the direct service of your child or is an emergency, be directed to me …"

90. Moreover, despite the Parents' prior express request, on the first page of the District's April 2025 Open Records log, H.T., age 11's, name and student identification number were left unredacted.

91. Interestingly, the names and identification numbers of other students were redacted from the same report.

92. On May 13, 2025, the Parents appealed an Open Meetings violation by the SBDM Committees to Principal Parrott. On May 28, 2025, Olivia submitted a second complaint concerning the SBDM Council itself.

93. On May 20, 2025, in response to the first complaint, the District, through counsel, acknowledged “the violations set out in your complaint and agree the committees’ actions were not following the regulations set out in the Open Meetings Act.”

94. On June 2, 2025, in response to the second complaint, the District, through counsel, acknowledged all but one of the “violations set out in your complaint” and agreed that “the Buckner Elementary SBDM Council and all other SBDM Councils are to follow the regulations set out in the Open Meetings Act.”

95. At a regular meeting of the School Board on May 19, 2025, the School Board again issued an Open Records Report containing H.T., age 11’s, name and student identification number, unredacted.

96. At the meeting, in response to the disclosure, O.T. made an unplanned public comment indicating a belief that the disclosure of her child’s name and identification number was retaliatory.

97. In response, Superintendent Radford did not dispute the disclosure, stating: “I wouldn’t dispute that,” and “we will look into that and I will follow up with you personally.”

98. None of the other Board Members responded to the statements, and Superintendent Radford never followed up.

99. In connection with this disclosure, Olivia and Timothy sent an inquiry to School Board Chair, Carly Clem, questioning the existence of the Open Records log in the meeting minutes.

100. On May 27, 2025, District Counsel responded to the inquiry. In the same communication, District Counsel stated, “We apologize her name was included and have redacted her name from the attached log.”

101. The only solution offered by the District in connection with the disclosure was a new student identification number for H.T., age 11.

102. On June 3, 2025, one day after the District admitted the SBDM Council’s violations of the Open Meetings Act, Principal Parrott emailed Deputy Superintendent Deaves, Niki Brown, and Elementary Level Director Dant a link to his agenda for the June 9 SBDM Council meeting, writing: “This has a lot of changes to policy and Bylaws.” Will you please take a look through it all and give me your feedback?”

103. The next day, June 4, 2025, Ms. Brown replied, “Brent [Deaves] and I reviewed this morning and everything looks good.” No draft policy was submitted to the Superintendent for review as required by Board Policy 02.4241, and no District administrator objected to the elimination of parent participation.

104. On June 9, 2025, during a meeting of the SBDM Council, Principal Parrott proposed to eliminate SBDM committees and to replace them with a “shared responsibility model” using Professional Learning Community (PLC) and Parent-Teacher Organization (PTO) meetings.

105. This proposal came just seven (7) days after District Counsel admitted the SBDM Council’s violations of the Open Meetings Act.

106. The proposed amended bylaws, including Article V, which provides that Buckner Elementary “will not utilize School-Based Decision Making (SBDM) committees” were taken under advisement.

107. In response to a parent question about his proposal, Principal Parrott clarified that parents would not be permitted to attend said PLC meetings.

108. In July 2025, the SBDM Council amended its bylaws to eliminate SBDM Committees.

109. On July 28, 2025, the SBDM Council voted to eliminate SBDM Committees without review by the Superintendent; Board Policy 02.4241 requires review by the Superintendent before a council policy can be adopted.

110. Buckner Elementary became the only school in the entire district to eliminate SBDM Committees.

111. The elimination of SBDM Committees only served to remove parents from the governance process.

112. At the start of the 2025-2026 school year, H.T., age 11, was assigned a new student identification number in connection with the District's disclosure of her name and number in the months prior.

113. Unfortunately, the District took no action to update any of the systems or programs utilized by students to account for H.T., age 11's, new student identification number.

114. As a result, H.T., age 11, could not log in to or otherwise access any of these required systems or programs.

115. On August 19, 2025, Olivia Tipton sent the following email to District Counsel, School Board Chair Clem, and the newly hired District Superintendent, Claudette Herald:

> As of yesterday, my daughter still has not been appropriately set up to use any of the programs that she needs to be a successful student. Last week, My daughter was not able to check out a book at the library due to her student ID issues. On Friday, the children were told that they would be using their chromebooks yesterday. She was highly stressed all weekend that she would not be able to log in correctly since the ID change. I was optimistic, but ultimately disappointed. Yesterday after school

> she asked me why people at the school don't like her. Her barely 10 year old logic was that she is the only one that keeps having all these issues so it must be because someone is upset with her or doesn't like her. Her stress this weekend was centered around the fact that she knew she would be sent to the library, where they would not know how to solve the issue and wouldn't know she has two student ID numbers now. Frankly, she docent (sic) even really understand all that happened because we have kept as much from her as possible. She also has an anxiety disorder diagnosis. She said it makes it her job the (sic) fix the problem and she doesn't know how either, which is the cause of extreme anxiety. I share this infraction because I want everyone to remember that my sweet 10 year old daughter is the victim of all of this behavior. While her teachers so far have been fantastic, she is still dealing with the effects of the previous retaliation, making this ongoing to the current year. If she planned to buy lunch, I suspect I would be picking up a starving child. This is not acceptable when the district had ample amount of time to ensure this did not happen, just as they had able opportunity and the knowledge to redact her information from being released in the first place.
>
> I ask for confirmation that by tomorrow my child is appropriately set up to use the systems that are required of her and this will be handled by an adult, and not my child.

116. The next day, Superintendent Herald responded, confirming that she contacted the District's Director of Technology and including his response.

117. In his response, the Director of Technology confirmed that H.T., age 11, should now have access to the required programs and noted that "this is the first time we have issued a new student id that I'm aware of."

118. After another day, H.T., age 11, was able to access the required programs and could check out library books.

119. On August 25, 2025, when asked whether the removal of parents from SBDM committees was retaliatory, Principal Parrott stated, "I could. I could see that. Yeah. But that that was not why."

120. Instead, Principal Parrott explained that the change was motivated by "allowing more flexibility" and by taking "the level of legal burden off of teachers who are trying to run a committee." Principal Parrott elaborated: "It's hard for me to say, 'hey, you got this tough job, and

I need you to run this and follow every one of these laws and make sure you don't like misstep, right?' That's a lot to put on a teacher asking them to run a committee, right?"

121. To this explanation, Olivia Tipton asserted that the District, having been exposed for violating the Open Meetings Act, was circumventing the Act by not allowing parent participation at all. To which Principal Parrott answered, "I would say that that's how it it (sic) comes out."

122. On October 13, 2025, during a regular meeting, Olivia Tipton gave a public comment to the Oldham County Board of Education.

123. During her public comment, Olivia discussed retaliation, raising the disclosure of H.T., age 11's, name and student identification number in April and May; that her new student ID prevented her from accessing her school programs; and the second new discriminatory schedule.

124. In response, School Board Chair Clem rebuffed Olivia, indicating that the ID issue was "remedied very quickly"; that she could not ascertain what Olivia wanted; and that any delay could be attributed to the change in leadership within the District.

125. As had become standard practice for the District, Clem then demanded an itemized list of Olivia's grievances.

126. In response to Olivia's comment, School Board Member Sheffer publicly disclosed, on the record, that the Tipton Family had previously been offered an in-district transfer to another school.

127. Member Sheffer was not party to the conversation where the transfer was offered; the offer was communicated by former Superintendent Radford and Board Chair Clem.

128. Thus, in response to Olivia's public comment concerning disclosure of her daughter's identity, the School Board, without justification, publicly disclosed additional information regarding the children.

129. At the conclusion of the meeting, after her public comment, Olivia and the new Superintendent Herald had a conversation.

130. In that conversation, Olivia raised the impropriety and discriminatory nature of the second new schedule as to students with disabilities and also discussed the removal of parents from SBDM Committees, which she views as retaliation.

131. Most significantly though, Olivia informed Superintendent Herald that she had yet to receive H.T., age 11's, 504 Plan for the year, despite the fact that it was October and school started in August.

132. Just as the School Board did, Superintendent Herald asked for an itemized list of specific grievances so they could "start tackling it."

133. On November 17, 2025, the SBDM Council convened a regular meeting. After the meeting, in a conversation between Olivia and Principal Parrott, Olivia asked whether he had told the Council Members about the Open Meetings violations admitted by the District. Principal Parrott answered, "I did not."

134. During that same conversation, Olivia again raised Ms. Brown's statement from the Climate Committee meeting on February 5, 2025, that the instructional loss affecting Tier 3 students impacted "less than 5% of our students."

135. Notably, after Olivia first disclosed the statement to Principal Parrott, Principal Parrott asked her to share the recording during a phone call on March 7, 2025 ("I haven't heard the statement … maybe if you could share that recording with me.").

136. However, on November 17, 2025, after Olivia reraised the statement and indicated that it had been recorded, Principal Parrott responded, “I wasn’t there, so it’s hard for me to know.” Principal Parrott took no action in response on either occasion.

137. Four (4) days after Olivia’s exchange with Principal Parrott, on November 21, 2025, a District employee created an IEP/Discipline evaluation record for H.T., age 9, a student with no disciplinary history.

138. On December 3, 2025, Olivia Tipton and another Oldham County parent publicly addressed the Kentucky Board of Education.

139. Specifically, Olivia raised and discussed problems of equity affecting students with disabilities throughout the Oldham County School District; and criticized the SBDM Council, citing discriminatory decision-making, open meetings violations, and the Council’s propensity for “round-robin” governance without any action being taken.

140. To supplement her complaints, Olivia also proposed two solutions for the KBE’s consideration: (1) Complaints to the Education Professional Standards Board (EPSB) should be allowed to be filed anonymously to deter retaliation and a chilling effect on the exercise of parental rights; and (2) EPSB Complaints should not be required to be filed against a single educator as this practice creates barriers to relief in the presence of conduct that is systematic or involves multiple actors.

141. One KBE Member indicated that he was “moved” by Olivia’s address, while KBE Chair Robinson requested that she raise her issues regarding SBDM at the next KBE meeting.

142. KBE Member Trimble expressed his appreciation for Olivia’s attitude, and the lack of threats and aggression displayed while dealing with these problems.

143. At 2:34 p.m. on December 15, 2025, in response to a written question from Olivia, Principal Parrott wrote: "Parents did participate in the [Comprehensive School Improvement Plan (CSIP)] process during the PTO meeting on October 28."

144. This assertion by Principal Parrott was patently false on three grounds: (1) the Kentucky Department of Education did not release state assessment scores, upon which the CSIP is built, until November 19, 2025, three weeks after the October 28 PTO meeting; (2) PTO meetings are not SBDM meetings and do not satisfy the requirement that parents participate in CSIP development under KRS 160.345; and (3) the minutes of the October 28, 2025, PTO meeting reflect no discussion of the CSIP.

145. That afternoon, during a regular meeting, after Olivia spoke during public expressions, the SBDM Council, chaired by Principal Parrott, approved the 2025-2026 CSIP by unanimous vote.

146. On December 16, 2025, following up on her address to the Kentucky Board of Education, Olivia submitted a written complaint to the Kentucky Department of Education, via email to Matthew Courtney, describing the District's conduct toward her family and stating that she records her conversations with the District.

147. On December 17, 2025, in connection with that day's ARC regarding H.T., age 9, Olivia and Timothy signed a Conference Summary page, which was pre-printed with an ARC date of December 15, 2025, and listed as a purpose of the meeting: "To discuss disciplinary action."

148. On December 23, 2025, approximately thirty (30) minutes before a scheduled phone call with Olivia and Timothy, Jennifer Hallas unlocked, modified the start and end dates of, and relocked H.T., age 9's, operative IEP in Infinite Campus and deleted and recreated a plan

record. Thirteen (13) minutes later, Ms. Keil deleted the IEP/Discipline evaluation record created on November 21, 2025.

149. Neither Ms. Hallas nor Ms. Keil disclosed these actions to Olivia and Timothy during the subsequent scheduled call.

150. During that call, Ms. Hallas acknowledged the value of Olivia and Timothy's recordings, stating: "it is helpful that you recorded it because then we can listen to it and compare it to the notes. Um, and maybe we should just start doing that moving forward on both sides."

151. Olivia Tipton has ADHD and she has repeatedly informed the District of her disability in their interactions over the years.

152. At a Section 504 meeting for H.T., age 11, on March 3, 2025, Olivia told District staff: "I also have ADHD, so like full disclosure, like I am also very, very disabled in this regard. And the fact that this is very difficult for me to follow."

153. On March 4, 2025, Olivia wrote to Ms. Keil: "due to my ADHD, it is difficult for me to fully process information if it is verbal alone." Ms. Keil forwarded that email to Ms. Brown and Principal Parrott that same day.

154. Olivia again disclosed her disability on the record during the aforementioned ARC on December 17, 2025, and again at a parent group meeting, at which Ms. Hallas was present, on December 18, 2025.

155. On January 14, 2026, Olivia wrote to Ms. Hallas: "I say it often, but I also have ADHD. I am unable to comprehend and process effectively without seeing things in writing and a chance to process. Ironically, one of the tools my doctor team had me implement many years ago was the use of audio recording. It has been life changing for me in helping mitigate my own disability. I use this daily for all manners of my functioning."

156. In that same January 14 email, Olivia and Timothy requested mediation. They renewed the request to the Kentucky Department of Education on January 20, 2026. On January 21, 2026, Olivia and Timothy again wrote the District: "If the district is declining mediation, please state that directly so we can proceed accordingly."

157. Superintendent Herald was copied on both the January 20 request to the Kentucky Department of Education and the January 21 request to the District.

158. On January 23, 2026, at 7:24 a.m., Jennifer Hallas replied to the Kentucky Department of Education, copying Superintendent Herald: "Oldham County Schools respectfully declines mediation."

159. On January 25, 2026, at 11:46 p.m., Olivia Tipton sent an IDEA State Written Complaint, with its exhibits, directly to Ms. Hallas and Superintendent Herald.

160. On January 26, 2026, Olivia and Tim filed a Complaint against the District with the Kentucky Department of Education (Agency #2526-C-68). That same day, the District convened H.T., age 9's, annual review ARC without either Parent present.

161. Following the KDE Complaint, District Counsel, Rudy Ellis III, who had never attended any of H.T., age 9's, previous ARC meetings, attended the ARC meetings on April 2, April 16, and May 8, 2026.

162. During the ARC on April 2, District Counsel stated, "You all have filed a complaint. That is the way we were going to address that. Okay? You all chose to do that." Despite being given the opportunity to clarify his statements, Counsel did not.

163. District Counsel further stated that Olivia and Timothy had "decided to go a different route. And because they've gone a different route, that has closed off some of the communication that we're going to have on certain things until it's resolved," and that, "had that

not occurred, we could potentially had those conversations and resolved them amongst all of us as opposed to getting state agencies involved."

164. The Conference Summary produced by the District memorializes the same position, stating that the District would "not address some of their concerns … due to the state formal complaint that was filed by the parents."

165. At the ARC on April 2, 2026, Ms. Hallas announced that the conference notes would be read aloud and approved in the meeting, stating that "we won't be changing the notes after the ARC," and that information by the parents could be attached.

166. At the close of that meeting, Olivia stated: "I've read the notes. I haven't had time to say that I've accepted everything in there," and she described the process as "like drinking from a fire hose."

167. On April 10, 2026, Olivia and Timothy filed a second Complaint against the District with the Kentucky Department of Education, copying Superintendent Herald and Ms. Hallas on the filing.

168. At the ARC on April 16, 2026, when the ARC Chair prepared to read the conference notes aloud, Olivia asked that the notes be sent to them in written form so they could be reviewed by the parents. As Olivia explained, the notes being read aloud would be "hard to follow" and the parents would not have "equal access" to notes in written form.

169. In denying the request, Ms. Hallas stated, "notes don't have to be agreed upon."

170. Olivia and Timothy's Advocate then asked that the parents' objections be added to the notes as a parent concern, without any change to the District's notes. Ms. Hallas refused, stating: "we will not amend the notes." When the Advocate stated for the record that Ms. Hallas would not allow a parental addendum, Ms. Hallas answered: "Correct. I'll give you that. Yes."

Although, fourteen (14) days prior, Ms. Hallas had told Olivia and Timothy that their input could be attached.

171. The District then emailed the notes to Olivia and Timothy, but then immediately resumed reading the notes aloud, requiring that any response by Olivia and Timothy be given in the moment.

172. Interestingly, the Prior Written Notice subsequently created by the District in connection with the meeting stated that Olivia and Timothy "chose not to remain in the ARC through completion of the reading," and failed to disclose that Ms. Hallas had refused the parents' addendum.

173. That evening, Olivia and Timothy posted on Facebook a video depicting H.T., age 9's, Speech-Language Pathologist, Ms. Wade, laughing during an ARC as Olivia described H.T., age 9's, disability-related struggles.

174. That same night, at 9:54 p.m., a current Buckner Elementary teacher who has never taught any of Olivia and Timothy's children sent a text message to a member of the Oldham County Grapevine Facebook group asking whether she knew the group's administrators. The teacher wrote: "A difficult parent at Buckner posted a short clip of what is supposed to be a confidential IEP meeting and has slandered my colleague's character," and stated that she had already "reached to the admins and got response from one."

175. The teacher's characterization of the post as coming from "what is supposed to be a confidential IEP meeting" was false; parents may lawfully publish recordings of their own child's ARC meetings. The District's Request for Due Process Hearing later targeted the same posts on the same community page, the Oldham County Grapevine. As a result, Olivia was labeled a

"difficult parent" by a current District employee within the community where her children attend school.

176. The next afternoon, on April 17, 2026, Ms. Hallas informed Olivia and Timothy that a new Speech-Language Pathologist would take over H.T., age 9's, services. No educational or clinical justification was provided, even though Ms. Wade had been H.T., age 9's, provider for the preceding two (2) years and had fully participated in the ARC the day before.

177. The District later admitted, in writing, that the change was made because of Olivia and Timothy's speech: "This change occurred by the District when the Parents, Olivia and Timothy Tipton, posted a blatantly out-of-context image and video of Ms. Wade's on social media. Ms. Wade was not present in the ARC due to an effort to protect her, and other staff, from continued harassment and embarrassment by the Parents and their continued social media conduct."

178. Upon information and belief, on April 20, 2026, Principal Parrott approached H.T., age 9, on two occasions to inquire about her glasses.

179. On April 29, 2026, Olivia and Timothy posted on Facebook video content depicting District Counsel's statements during the ARC on April 2, 2026.

180. On May 1, 2026, Ms. Hallas informed Olivia and Timothy that the District was reopening the evaluation consent addressed at the ARC on April 2, 2026, stating: "The basis for re-visiting consent/referral is with regard to your email to KDE on 4/10/26 and the corresponding documents sent." That same day, Ms. Hallas issued a Prior Written Notice ninety-five (95) days late that contained the wrong child's name.

181. On May 8, 2026, the ARC ordered by the Kentucky Department of Education's Corrective Action Plan was convened.

182. The District had seven (7) participants attend the ARC on May 8, 2026, who were all together in one room, with their camera off. During the ARC, Olivia and Timothy could not see who was present, who was speaking, or how the District participants were responding.

183. Ms. Keil, Ms. Hallas, and District Counsel participated in the ARC, among other whom Olivia and Timothy had never met.

184. Despite Ms. Keil being ARC Chair, Ms. Hallas did nearly all of the talking for the District.

185. Olivia and Timothy requested that the District's camera be turned on, to which Ms. Hallas refused, stating: "Yes, we are leaving the camera off," and that "we are not going to have the camera on in an effort to protect our staff and ARC members."

186. In a written response a week later, the District stated that Ms. Hallas had "explained the reason the video will be turned off is to protect staff members from continued harassment by the Parents and their continued misrepresentations on social media," and announced that "[t]he school team will not longer use the camera for ARC meetings."

187. In contrast, at the ARCs convened on April 2 and April 16, 2026, prior to the social media posts by Olivia and Timothy, Ms. Hallas turned on the camera to allow Olivia and Timothy to see the ARC members.

188. The ARC concluded at approximately 3:40 p.m. on May 8, 2026.

189. At 5:39 p.m. on May 8, 2026, within two (2) hours of that ARC's conclusion, the District filed a 48-page Request for Due Process Hearing against Olivia and Timothy. Ms. Hallas served the Request through her District email address and listed herself as the "Individual/Organization requesting the due process hearing."

190. The District's transmittal of the Request to the Kentucky Department of Education was copied to Superintendent Herald and District Counsel.

191. Under Board Policy 08.131, adopted June 24, 2024, the Board "shall determine whether to file for due process hearings … on behalf of the District," except that the "Superintendent/designee is authorized to request due process hearings … due to substantial likelihood of harm/danger/likelihood of injury by or of a student." The District's Request alleged no harm, danger, or likelihood of injury by or of H.T., age 9, or any other student. Accordingly, upon information and belief, the Request was filed either by decision of the Board or by Superintendent Herald or her designee outside the authority the policy confers.

192. Superintendent Herald had received both of Olivia and Timothy's state complaints directly, and had been copied on their January 2026 requests for mediation, Ms. Hallas's January 23, 2026, refusal of mediation, the District's correspondence with the Kentucky Department of Education concerning both of Olivia and Timothy's state complaints, and the May 8, 2026 filing. Superintendent Herald took no action to withdraw or correct the Request between its filing and the District's Motion to Dismiss on June 9, 2026.

193. The District stated the nature of the problem as "concerns with the Parents role in ARC meetings." The Request did not identify any problem with H.T., age 9's, identification, evaluation, placement, or free appropriate public education.

194. By its Request, the District sought, among other things, "[i]mmediate ceasing of behaviors related to the KRS and KARs by the Parents" and "[r]emoval of the [T's] advocate who has interfered with the ARC progress and arguably engaged in the unauthorized practice of law."

195. In support, the Request acknowledged that Olivia and Timothy have the right to record meetings, but asserted that, "the Parents have gone beyond the purpose with the aim to

persecute and publicly harass the District and staff"; took issue with the Parents' public comment that the District has "systematic level issues and practices that need to be corrected"; and alleged that "[t]he Parents conduct has caused fear in ARC members due to the social media posts and intent to humiliate and embarrass staff."

196. The District's attack on Olivia's recording of ARC meetings came less than four (4) months after Olivia informed Ms. Hallas in writing that recording is the tool her doctors prescribed to mitigate her own disability, and less than five (5) months after Ms. Hallas herself told Olivia and Timothy that their recording was "helpful."

197. An in-person resolution meeting was held on May 22, 2026. The District did not propose to resolve any issue of identification, evaluation, placement, or FAPE. Instead, the District proposed banning the Parents' advocate from ARC meetings, requiring in-person attendance, and requiring Olivia and Timothy to remove their Facebook posts regarding the District, all of which had been requested in the District's Request for Due Process Hearing.

198. At that meeting, District Counsel stated that the District had "the ability to go the KBA" and "the ability to go the county attorney," and that "[w]e reserve our right to do that," in an effort to prevent the Plaintiffs from exercising their IDEA right to use a non-attorney advocate.

199. District Counsel further stated that Olivia and Timothy's posts "definitely border on misrepresentation and defamation. And so, you know, that's why we would ask that they remove those."

200. On May 27, 2026, KDE Hearing Officer Roland P. Merkel found the District's Request insufficient and questioned whether he had jurisdiction over the relief the District sought.

201. On May 28, 2026, while the District's Request against them was pending, Olivia and Timothy spoke publicly at a news conference outside the District's administrative building

regarding the District's treatment of students with disabilities and its retaliation against their family for filing a state complaint.

202. On June 9, 2026, rather than amending its Request, the District moved to voluntarily dismiss it. The Hearing Officer dismissed the Request with prejudice, issuing his own Order "instead of Petitioner's proposed tendered Order of Voluntary Dismissal." Litigation regarding attorneys' fees in connection with that proceeding is pending in this Court, Civil Action No. 3:26-cv-00522.

203. The Buckner Elementary SBDM Council, chaired by Principal Parrott, has continued to apply and re-adopt the exclusion of parents from SBDM Committees within the limitations period.

204. On May 18, 2026, the Council approved the 2026-2027 master schedule and space plan, developed under a policy giving that responsibility to "[t]he principal in collaboration with [Professional Learning Communities] PLCs," which are composed of school staff and from which parents are excluded. On July 27, 2026, the Council approved a reformatted policy manual that again assigns committee functions to the principal and PLCs. On August 7, 2026, the Council approved revisions to the master schedule under the same structure.

205. The Request for Due Process Hearing coupled with the District's demands that Olivia and Timothy remove their posts, amounts to conduct that would deter a person of ordinary firmness from continuing to speak.

206. Significantly, after the resolution meeting, Olivia and Timothy stopped posting about the District on social media, a platform they used to advocate publicly for their children and other students with disabilities.

207. After the District sought to bar Olivia and Timothy's Advocate from ARC meetings and District Counsel threatened their Advocate with referrals to the Kentucky Bar Association and County Attorney, Olivia and Timothy stopped using their Advocate to protect him from those threats.

208. As a result, in the Advocate's place, the undersigned counsel for Olivia and Timothy attended the resolution meeting and ARC on May 22, 2026, at a cost of several thousand dollars in time and travel expenses.

209. Moreover, the undersigned counsel attended an ARC with Olivia and Timothy on October 7, 2026, with their Advocate appearing remotely.

210. During the meeting, the ARC refused to turn on its camera to allow Olivia and Timothy's Advocate actively participate in the meeting. As justification, the ARC cited "the issues we've had in the past with video" and Ms. Hallas stated, "we're not comfortable being recorded … That is why we are going to not have our video on."

211. Beginning in February 2026, after Olivia and Timothy learned of Ms. Hallas' and Ms. Keil's alteration and deletion of H.T., age 9's, records on December 23, 2025, from Infinite Campus audit logs produced by the District, Olivia and Timothy paid for Olivia to receive training in special education advocacy and records procedure to allow them to continue advocating for H.T., age 11, and H.T., age 9, and protect their records.

212. In pursuit of said training, Olivia and Timothy have spent approximately $7,000.

213. Moreover, Olivia and Timothy have suffered significant emotional distress, reputational harm in the community where their children attend school, lost time, and financial loss as a result of the Defendants' conduct.

**COUNT I – FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)**
**(Olivia and Timothy Tipton against all Defendants; Defendants Parrott, Keil, Hallas, and Herald in their individual capacities)**

214. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

215. Plaintiffs bring this claim under 42 U.S.C. § 1983. At all times relevant, each individual Defendant acted under color of state law.

216. In publicly criticizing the District on Facebook, Plaintiffs were engaged in conduct protected by the First Amendment to the United States Constitution.

217. Plaintiffs were also engaged in speech and petitioning protected by the First Amendment when they addressed the Oldham County Board of Education on October 13, 2025, and the Kentucky Board of Education on December 3, 2025; when they reported the District's conduct in writing to the Kentucky Department of Education on December 16, 2025; when they requested mediation in January 2026; when they filed state complaints on January 26 and April 10, 2026; when they recorded ARC meetings; and when they spoke at a news conference on May 28, 2026.

218. In response to the Plaintiffs' engaging in constitutionally protected activity and exercising their First Amendment Rights, the District filed a Request for Due Process Hearing against Plaintiffs before the Kentucky Department of Education.

219. The Request for Due Process Hearing filed by the District against Plaintiffs did not relate in any way to the educational services and accommodations to be provided by the District to Plaintiffs' children, students with disabilities.

220. Rather, the Request for Due Process Hearing related exclusively to the constitutionally protected conduct of Plaintiffs.

221. The decision to file the Request for Due Process Hearing was made and/or ratified by the District's final policymaker: Superintendent Herald.

222. Under Board Policy 08.131, only the School Board may decide to file a Request for Due Process Hearing, except that the Superintendent or her designee may do so based on a substantial likelihood of harm, danger, or injury by or to a student, which the Request did not allege. Thus, either the School Board decided to file the Request, or Superintendent Herald exercised the School Board's authority, which was ratified by the School Board in allowing the Request to proceed.

223. Defendant Hallas signed and filed the Request for Due Process Hearing at 5:39 p.m. on May 8, 2026, within two (2) hours of the KDE-mandated ARC. Hallas listed herself as the individual requesting the hearing.

224. Defendant Herald received Plaintiffs' first state complaint directly on January 25, 2026. She was copied on Plaintiffs' second state complaint on April 10, 2026; on Ms. Hallas' refusal of mediation on January 23, 2026; on the District's correspondence with the Kentucky Department of Education as to the complaints; on the "raw data" correspondence on April 29, 2026; and on the May 8, 2026 transmittal of the Request for Due Process Hearing.

225. Superintendent Herald knowingly authorized, acquiesced, or ratified the filing of the Request for Due Process Hearing by her subordinate, and took no action to withdraw the Request in the thirty-two (32) days it was pending before dismissal.

226. The District, through its final policymaker, Defendant Herald, sought an order from the Kentucky Department of Education requiring the Plaintiffs to remove their Facebook posts regarding the District.

227. The District, through its final policymaker, Defendant Herald, sought an order from the Kentucky Department of Education precluding the Plaintiffs from further exercise of their First Amendment rights in relation to the District.

228. The District, through its final policymaker, Defendant Herald, instituted the Due Process proceedings for the purpose of preventing, chilling, and/or interfering with Plaintiffs' exercise of their First Amendment Rights.

229. The District, through its final policymaker, Defendant Herald, instituted the Due Process proceedings in retaliation for Plaintiffs' lawful exercise of their First Amendment rights, which were intended to deter the Plaintiffs from the lawful exercise of their First Amendment rights, and did so deter them.

230. Defendants Herald and Hallas, under color of state law, sought an order from the Kentucky Department of Education requiring the Plaintiffs to remove their Facebook posts regarding the District.

231. Defendants Herald and Hallas, under color of state law, sought an order from the Kentucky Department of Education precluding the Plaintiffs from further exercise of their First Amendment rights in relation to the District.

232. Defendants Herald and Hallas, under color of state law, instituted the Due Process proceedings for the purpose of preventing, chilling, and/or interfering with Plaintiffs' exercise of their First Amendment Rights.

233. Defendants Herald and Hallas, under color of state law, instituted the Due Process proceedings in retaliation for Plaintiffs' lawful exercise of their First Amendment rights, which were intended to deter the Plaintiffs from the lawful exercise of their First Amendment rights, and did so deter them.

234. In addition to the Request for Due Process Hearing, the District replaced H.T., age 9's, Speech-Language Pathologist the day after Plaintiffs' April 16, 2026, social media post, which the District admitted was done because of the post; refused to allow parent addendums to the conference notes within six (6) days of Plaintiffs' second state complaint; reopened the evaluation consent for H.T., age 9, on May 1, 2026, in response to Plaintiffs' complaint to the Department of Education ("with regard to your email to KDE"); adopted a standing rule that District staff would not appear on camera during H.T., age 9's, ARC meetings, based on Plaintiffs' social media; and threatened Plaintiffs' Advocate with referrals to the KBA and County Attorney while demanding removal of Plaintiffs' social media posts.

235. Also, during the ARC on October 7, 2026, Defendants, through its final policymaker and/or under color of state law, denied Plaintiffs' Advocate the use of video during the remote proceedings.

236. Defendants, through its final policymaker and/or under color of state law, restricted video access to prevent further the further exercise of their First Amendment rights, citing the "issues we've had with video in the past," and that "we're not comfortable being recorded."

237. Defendant Jennifer Hallas replaced H.T., age 9's, Speech-Language Pathologist the day after Plaintiffs' April 16, 2026, social media post; refused any parent addendum on April 16, 2026, six days after Plaintiffs' second state complaint which was copied to her; reopened the evaluation consent for H.T., age 9, on May 1, 2026, in response to Plaintiffs' complaint to the Department of Education ("with regard to your email to KDE"); and refused to turn the camera on during the May 8, 2026, ARC "to protect our staff."

238. As the District's Director of Specialized Academic Programming, Hallas knew that an IDEA Due Process Hearing was limited to a child's identification, evaluation, placement, and a

free appropriate public education. Nonetheless, Hallas filed a Request that raised none of those issues and instead sought to stop Plaintiffs' speech, remove their postings, and bar their Advocate, on the stated grounds that Plaintiffs aimed "to persecute and publicly harass the District and staff," and that their posts "caused fear in ARC members." Said Request for Due Process Hearing was filed within two (2) hours of a KDE-mandated ARC stemming from Plaintiffs' state complaint.

239. Moreover, on December 23, 2025, five days after Olivia raised her concerns to Defendant Hallas, and one week after Olivia's written complaint to the Kentucky Department of Education, Defendant Hallas unlocked, modified the start and end dates of, and relocked H.T., age 9's, operative IEP, without disclosure to Plaintiffs.

240. Defendant Hallas, acting under color of state law, engaged in said conduct in retaliation for Plaintiffs engaging in activity protected by the First Amendment to the United States Constitution.

241. Additionally, following Plaintiffs' Open Meetings complaints on May 13 and May 28, 2025, for violations admitted by the District on May 20, and June 2, 2025, Defendant Parrott proposed on June 9, 2025, to eliminate SBDM Committees, confirmed that parents would not be permitted to attend the meetings replacing them, and led the Council to eliminate the Committees on July 28, 2025, making Buckner the only school in the entire district without them. When asked whether the elimination was retaliatory, Defendant Parrott answered, "I could see that."

242. Defendant Parrott's excluding parents from the governance process continued into the limitations period. On November 17, 2025, he admitted that he had not disclosed the Open Meetings violations to the SBDM Council; on December 15, 2025, he misrepresented that parents had participated in developing the CSIP and chaired the Council's approval of the CSIP, after

Olivia spoke; and on May 18, July 27, and August 7, 2026, he chaired the Council's re-adoption of the structure that assigns committee work to staff-only PLCs.

243. Principal Parrott, under color of state law, engaged in said conduct in retaliation for Plaintiffs engaging in activity protected by the First Amendment to the United States Constitution.

244. Lastly, on December 23, 2025, thirteen (13) minutes after Ms. Hallas altered H.T., age 9's, IEP records, and one week after Olivia's written complaint to the Kentucky Department of Education, Ms. Keil deleted the IEP/Discipline evaluation record created on November 21, 2025, for a child with no disciplinary history, and failed to disclose the deletion to Plaintiffs on the call that followed or at all.

245. Ms. Keil chaired the ARC on May 8, 2026, from a room with the camera off; the Request for Due Process Hearing was filed at 5:39 p.m. that day, less than two (2) hours after the meeting ended.

246. Defendant Keil, acting under color of state law, engaged in said conduct in retaliation for Plaintiffs engaging in activity protected by the First Amendment to the United States Constitution.

247. Each individual Defendant, under color of state law, acted with reckless and/or callous indifference to Plaintiffs' federally protected rights, and with the intent to punish Plaintiffs for exercising those rights.

248. The District, through its final policymaker Defendants Herald, acted with reckless and/or callous indifference to Plaintiffs' federally protected rights, and with the intent to punish Plaintiffs for exercising those rights.

249. As the administrators and/or final policymakers for the District on special education, Section 504, and SBDM Compliance, Defendants Hallas, Keil, Parrott, and Herald were

aware that federal law prohibits retaliation against parents who advocate for their children with disabilities, petition the government for redress, and speak publicly about a public school district.

250. Defendant Hallas knew that Plaintiffs' recording and posting was protected: Her Request for Due Process Hearing concedes, "the Parents have a right to record meetings"; in January 2026, Olivia explained to Hallas that the recordings help her manage her own disability; and Hallas herself has told Plaintiffs that their recordings were "helpful."

251. As a direct and proximate result of the District's retaliatory actions, taken through its final policymaker Defendant Herald, Plaintiffs were deprived of their rights provided by the First Amendment to the U.S. Constitution.

252. As a direct and proximate result of Defendants Hallas, Keil, Parrott, and Herald's retaliatory actions, taken under the color of state law, Plaintiffs were deprived of their rights provided by the First Amendment to the U.S. Constitution.

253. As a direct and proximate result of the District's retaliatory actions, taken through its final policymakers Defendants Hallas, Keil, Parrott, and Herald, Plaintiffs suffered economic losses, including fees paid to counsel to attend ARC meetings in place of their advocate and the cost of training Olivia in special education advocacy and records procedure; emotional distress, anxiety, and humiliation; damage to their reputation in the community where their children attend school; and the suppression of their First Amendment freedoms.

**COUNT II – ADA RETALIATION**
**(Olivia and Timothy Tipton against the Oldham County Board of Education)**

254. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

255. Under the ADA, Plaintiffs, as the Parents of students with disabilities, have the right, free from discrimination and retaliation, to oppose acts and practices that discriminate against individuals with disabilities. 42 U.S.C. § 12203(a).

256. Plaintiffs have the right to complain, testify, assist, and participate in any manner in an investigation, proceeding, or hearing in opposition to disability discrimination and have the right to do so without reprisal. 42 U.S.C. § 12203(a).

257. In advocating for their children, students with disabilities, Plaintiffs have engaged in years' worth of protected activities with the aim of opposing, mitigating, and remedying the District's discriminatory actions.

258. Throughout the years, Plaintiffs have documented and reported discrimination and discriminatory practices to Superintendent Herald, Principal Parrott, 504 Coordinator Keil, Director of Specialized Academic Programming Hallas, former Superintendent Radford, Deputy Superintendent Deaves, Elementary Level Director Dant, the Oldham County Board of Education, the Kentucky Board of Education, and the Kentucky Department of Education.

259. The District is and was aware that Plaintiffs were engaged in protected activity.

260. At the District level, Plaintiffs' advocacy and reports of discrimination have prompted adverse action by the District toward the Plaintiffs.

261. In response to Plaintiffs' advocacy, the District has dismissed their concerns without any investigation and without any corrective action being taken.

262. In response to Plaintiffs' advocacy, the District has attacked Olivia Tipton's role on the SBDM Committees, participation in which is protected by KRS 160.345.

263. In response to Plaintiffs' advocacy, the District blocked the Plaintiffs from discussing their complaint and advocating for their children before the Oldham County Board of Education.

264. In response to Plaintiffs' advocacy, rather than remedying any of the Plaintiffs' complaints, the District offered the Plaintiffs to transfer their children to another school in the school district.

265. In response to Plaintiffs' advocacy, upon information and belief, on April 20, 2026, Principal Parrott approached H.T., age 9, on two occasions to inquire about her glasses, despite an absence of vision-related concerns in her IEP

266. In response to Plaintiffs' advocacy, the District attempted to weaponize IDEA Due Process proceedings to punish and deter the Plaintiffs from engaging in the same.

267. The adverse actions taken by the District in response to the Plaintiffs' advocacy were material and done with retaliatory intent.

268. The Plaintiffs' advocacy, protected activity under the ADA, was the direct and proximate cause of the District's adverse actions toward the Plaintiffs.

269. As a direct and proximate result of District's conduct, Plaintiffs suffered economic losses, including fees paid to counsel to attend ARC meetings in place of their advocate, the cost of training Olivia in special education advocacy and records procedure, the costs incurred in obtaining records and transcripts, and time lost attending meetings and engaging with the District; together with damages in the form of emotional distress, reputational harm, and violations of their statutorily protected rights.

**COUNT III – ADA INTERFERENCE**
**(Olivia and Timothy Tipton against the Oldham County Board of Education)**

270. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

271. Under the ADA, Plaintiffs, as the Parents of students with disabilities, have the right to aid and encourage their children in the exercise and enjoyment of their right to be free from disability discrimination. 42 U.S.C. § 12203(b).

272. Plaintiffs are free to exercise that right without fear of coercion, intimidation, threats, or interference in their exercise thereof. 42 U.S.C. § 12203(b).

273. By advocating for their children and opposing disability discrimination against them, Plaintiffs were engaged and are engaging in protected activity.

274. In response to Plaintiffs' advocacy, the District has taken materially adverse action against the Plaintiffs, for the purpose of interfering with the exercise of their right to advocate for their children.

275. In response to Plaintiffs' advocacy, the District convened an ARC for H.T., age 9, on December 10, 2025, without notice to either parent and without their participation, as found by the Kentucky Department of Education and affirmed by the Commissioner of Education.

276. In response to Plaintiff's advocacy, the District withheld H.T., age 9's, speech data. Olivia Tipton requested the raw data on December 12, 2025, and again on January 18 and 19, 2026, and the District did not produce all of the data until April 24, 2026, the day the Kentucky Department of Education issued its Report of Findings.

277. In response to Plaintiffs' advocacy, the District has altered, deleted, and backdated records without notice or disclosure to the Plaintiffs.

278. In response to Plaintiffs' advocacy, the District has attempted to block the Plaintiffs from communicating with the District and its agents.

279. In response to Plaintiffs' advocacy, the District tried to have the Plaintiffs' Advocate barred from attending ARC proceedings.

280. In response to Plaintiffs' advocacy, the District attempted to weaponize IDEA Due Process proceedings to punish and deter the Plaintiffs from engaging in the same.

281. In response to Plaintiffs' advocacy, the District attempted to weaponize IDEA Due Process proceedings to delay the Plaintiffs from pursuing a civil action against it.

282. Each of these materially adverse actions were taken by the District for the purpose of interfering with the Plaintiffs' right to advocate for their children, students with disabilities.

283. The District's actions were designed to coerce, intimidate, or threaten the Plaintiffs from continuing to advocate for their children against the District's discriminatory actions.

284. The District's interference was directly and proximately caused by the Plaintiffs' exercise of their rights.

285. As a direct and proximate result of the District's conduct, Plaintiffs suffered economic losses, including fees paid to counsel to attend ARC meetings in place of their advocate, the cost of training Olivia in special education advocacy and records procedure, the costs incurred in obtaining records and transcripts, and time lost attending meetings and engaging with the District; together with damages in the form of emotional distress, reputational harm, and violations of their statutorily protected rights.

**COUNT IV – SECTION 504 RETALIATION**
**(Olivia and Timothy Tipton against the Oldham County Board of Education)**

286. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

287. Under Section 504 of the Rehabilitation Act of 1973, a qualified individual with a disability cannot be excluded from participation in, denied the benefits of, or subjected to

discrimination under any program or activity receiving Federal financial assistance, solely by reason of their disability. 29 U.S.C. 794(a).

288. The Oldham County Board of Education administers a program or activity that receives Federal financial assistance and is subject to Section 504 of the Rehabilitation Act of 1973.

289. Section 504 of the Rehabilitation Act of 1973 incorporates by reference the antiretaliation provisions of the ADA. 29 U.S.C. 794(d).

290. Thus, Plaintiffs, as the Parents of students with disabilities, have the right, free from discrimination and retaliation, to oppose acts and practices that discriminate against individuals with disabilities. 42 U.S.C. § 12203(a).

291. Plaintiffs have the right to complain, testify, assist, and participate in any manner in an investigation, proceeding, or hearing in opposition to disability discrimination and have the right to do so without reprisal. 42 U.S.C. § 12203(a).

292. In advocating for their children, students with disabilities, Plaintiffs have engaged in years' worth of protected activities with the aim of opposing, mitigating, and remedying the District's discriminatory actions.

293. Throughout the years, Plaintiffs have documented and reported discrimination and discriminatory practices to Superintendent Herald, Principal Parrott, 504 Coordinator Keil, Director of Specialized Academic Programming Hallas, former Superintendent Radford, Deputy Superintendent Deaves, Elementary Level Director Dant, the Oldham County Board of Education, the Kentucky Board of Education, and the Kentucky Department of Education.

294. The District is and was aware that Plaintiffs were engaged in protected activity.

295. At the District level, Plaintiffs' advocacy and reports of discrimination have prompted adverse action by the District toward the Plaintiffs.

296. In response to Plaintiffs' advocacy, the District has dismissed their concerns without any investigation and without any corrective action being taken.

297. In response to Plaintiffs' advocacy, the District has attacked Olivia Tipton's role on the SBDM Committees, participation in which is protected by KRS 160.345.

298. In response to Plaintiffs' advocacy, the District blocked the Plaintiffs from discussing their complaint and advocating for their children before the Oldham County Board of Education.

299. In response to Plaintiffs' advocacy, rather than remedying any of the Plaintiffs' complaints, the District offered the Plaintiffs to transfer their children to another school in the school district.

300. In response to Plaintiffs' advocacy, upon information and belief, on April 20, 2026, Principal Parrott approached H.T., age 9, on two occasions to inquire about her glasses, despite an absence of vision-related concerns in her IEP

301. In response to Plaintiffs' advocacy, the District attempted to weaponize IDEA Due Process proceedings to punish and deter the Plaintiffs from engaging in the same.

302. The adverse actions taken by the District in response to the Plaintiffs' advocacy were material and done with retaliatory intent.

303. The Plaintiffs' advocacy, protected activity under the ADA, was the direct and proximate cause of the District's adverse actions toward the Plaintiffs.

304. As a direct and proximate result of the District's conduct, Plaintiffs suffered economic losses, including fees paid to counsel to attend ARC meetings in place of their advocate,

the cost of training Olivia in special education advocacy and records procedure, the costs incurred in obtaining records and transcripts, and time lost attending meetings and engaging with the District; together with damages in the form of emotional distress, reputational harm, and violations of their statutorily protected rights.

**COUNT V – SECTION 504 INTERFERENCE**
**(Olivia and Timothy Tipton against the Oldham County Board of Education)**

305. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

306. Under Section 504 of the Rehabilitation Act of 1973, a qualified individual with a disability cannot be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance, solely by reason of their disability. 29 U.S.C. 794(a).

307. The Oldham County Board of Education administers a program or activity that receives Federal financial assistance and is subject to Section 504 of the Rehabilitation Act of 1973.

308. Section 504 of the Rehabilitation Act of 1973 incorporates by reference the antiretaliation provisions of the ADA. 29 U.S.C. 794(d).

309. Thus, Plaintiffs, as the Parents of students with disabilities, have the right to aid and encourage their children in the exercise and enjoyment of their right to be free from disability discrimination. 42 U.S.C. § 12203(b).

310. Plaintiffs are free to exercise that right without fear of coercion, intimidation, threats, or interference in their exercise thereof. 42 U.S.C. § 12203(b).

311. By advocating for their children and opposing disability discrimination against them, Plaintiffs were engaged and are engaging in protected activity.

312. In response to Plaintiffs' advocacy, the District has taken materially adverse action against the Plaintiffs, for the purpose of interfering with the exercise of their right to advocate for their children.

313. In response to Plaintiffs' advocacy, the District convened an ARC for H.T., age 9, on December 10, 2025, without notice to either parent and without their participation, as found by the Kentucky Department of Education and affirmed by the Commissioner of Education.

314. In response to Plaintiff's advocacy, the District withheld H.T., age 9's, speech data. Olivia Tipton requested the raw data on December 12, 2025, and again on January 18 and 19, 2026, and the District did not produce all of the data until April 24, 2026, the day the Kentucky Department of Education issued its Report of Findings.

315. In response to Plaintiffs' advocacy, the District has altered, deleted, and backdated records without notice or disclosure to the Plaintiffs.

316. In response to Plaintiffs' advocacy, the District has attempted to block the Plaintiffs from communicating with the District and its agents.

317. In response to Plaintiffs' advocacy, the District tried to have the Plaintiffs' Advocate barred from attending ARC proceedings.

318. In response to Plaintiffs' advocacy, the District attempted to weaponize IDEA Due Process proceedings to punish and deter the Plaintiffs from engaging in the same.

319. In response to Plaintiffs' advocacy, the District attempted to weaponize IDEA Due Process proceedings to delay the Plaintiffs from pursuing a civil action against it.

320. Each of these materially adverse actions were taken by the District for the purpose of interfering with the Plaintiffs' right to advocate for their children, students with disabilities.

321. The District's actions were designed to coerce, intimidate, or threaten the Plaintiffs from continuing to advocate for their children against the District's discriminatory actions.

322. The District's interference was directly and proximately caused by the Plaintiffs' exercise of their rights.

323. As a direct and proximate result of the District's conduct, Plaintiffs suffered economic losses, including fees paid to counsel to attend ARC meetings in place of their advocate, the cost of training Olivia in special education advocacy and records procedure, the costs incurred in obtaining records and transcripts, and time lost attending meetings and engaging with the District; together with damages in the form of emotional distress, reputational harm, and violations of their statutorily protected rights.

**COUNT VI– DISABILITY DISCRIMINATION: ADA TITLE II**
**(Olivia Tipton against Oldham County Board of Education)**

324. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

325. Olivia Tipton has Attention-Deficit/Hyperactivity Disorder (ADHD).

326. Olivia's ADHD is a mental impairment that substantially limits one or more of her major life activities, including: learning, reading, concentrating, and thinking.

327. Olivia Tipton has a disability.

328. Olivia Tipton is a qualified individual with a disability.

329. Defendant, the Oldham County Board of Education, is a public entity.

330. Olivia disclosed her disability to Defendant and its agents on at least four (4) separate occasions.

331. Because of her ADHD, Olivia Tipton requested an accommodation: the opportunity to review the ARC conference notes in writing before approving them, and to add a written parent

response to the record. The District had offered parents the same opportunity at the ARC on April 2, 2026.

332. The requested accommodation was reasonable.

333. The accommodation would have allowed Olivia Tipton to meaningfully participate in the meetings without any cost to the District.

334. Despite the reasonableness of Olivia's request in light of her disability, the Oldham County Board of Education refused her request for reasonable accommodation.

335. On April 16, 2026, after Olivia asked to review the conference notes in writing, because hearing them read aloud was hard for her in light of her ADHD, Ms. Hallas refused to allow any parent addendum to the notes and required they be approved as read aloud at the meeting.

336. The notes were emailed to the Plaintiffs during the meeting and were immediately read aloud, so that any responses by the parents had to be given in the moment, and they were refused any opportunity to add their objections after the meeting.

337. No law or legitimate policy required the District to deny Olivia's request for reasonable accommodation.

338. Because the District refused the accommodation, Olivia was denied meaningful participation in the three (3) consecutive ARC meetings she attended on December 17, 2025, April 2, 2026, and April 16, 2026, at which her daughter's eligibility, evaluation, goals, and present levels were decided.

339. As a result, Olivia Tipton was excluded from participation in and/or denied the benefits of the services, programs, and activities of the Oldham County Board of Education, a public entity.

340. Moreover, the Oldham County Board of Education discriminated against Olivia Tipton on account of her ADHD.

341. The District denied Olivia's request for accommodation and implemented the subsequent policy with the intent to discriminate against Olivia Tipton on account of her ADHD.

342. As a direct and proximate cause of the District's disability discrimination, Olivia Tipton suffered damages in the form of reputational harm, emotional distress, violations of her right to be free from disability discrimination, and denying her meaningful participation in advocating for her daughter's civil and educational rights.

343. As a direct and proximate result of the District's disability discrimination, Olivia Tipton was denied meaningful participation in advocating for her daughter's civil and educational rights, suffered economic losses, including fees paid to counsel to attend ARC meetings and time lost attending meetings and engaging with the District, together with damages in the form of emotional distress, reputational harm, and violations of their statutorily protected rights.

**COUNT VII – DISABILITY DISCRIMINATION: SECTION 504**
**(Olivia Tipton against Oldham County Board of Education)**

344. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

345. Under Section 504 of the Rehabilitation Act of 1973, a qualified individual with a disability cannot be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance, solely by reason of their disability. 29 U.S.C. 794(a).

346. The Oldham County Board of Education administers a program or activity that receives Federal financial assistance and is subject to Section 504 of the Rehabilitation Act of 1973.

347. Olivia Tipton has Attention-Deficit/Hyperactivity Disorder (ADHD).

348. Olivia's ADHD is a mental impairment that substantially limits one or more of her major life activities, including: learning, reading, concentrating, and thinking.

349. Olivia Tipton has a disability.

350. Olivia Tipton is a qualified individual with a disability.

351. Olivia disclosed her disability to Defendant and its agents on at least four (4) separate occasions.

352. Because of her ADHD, Olivia Tipton requested an accommodation: the opportunity to review the ARC conference notes in writing before approving them, and to add a written parent response to the record. The District had offered parents the same opportunity at the ARC on April 2, 2026.

353. The requested accommodation was reasonable.

354. The accommodation would have allowed Olivia Tipton to meaningfully participate in the meetings without any cost to the District.

355. On April 16, 2026, after Olivia asked to review the conference notes in writing, because hearing them read aloud was hard for her in light of her ADHD, Ms. Hallas refused to allow any parent addendum to the notes and required they be approved as read aloud at the meeting.

356. The notes were emailed to the Plaintiffs during the meeting and were immediately read aloud, so that any responses by the parents had to be given in the moment, and they were refused any opportunity to add their objections after the meeting.

357. No law or legitimate policy required the District to deny Olivia's request for reasonable accommodation.

358. Because the District refused the accommodation, Olivia was denied meaningful participation in the three (3) consecutive ARC meetings she attended on December 17, 2025, April 2, 2026, and April 16, 2026, at which her daughter's eligibility, evaluation, goals, and present levels were decided.

359. By sole reason of her disability, Olivia Tipton was denied the benefits of the ARC meetings as she could not effectively advocate for her child.

360. While receiving Federal financial assistance, the Oldham County Board of Education discriminated against Olivia Tipton by sole reason of her disability.

361. As a direct and proximate result of the District's disability discrimination, Olivia Tipton was denied meaningful participation in advocating for her daughter's civil and educational rights, suffered economic losses, including fees paid to counsel to attend ARC meetings and time lost attending meetings and engaging with the District, together with damages in the form of emotional distress, reputational harm, and violations of their statutorily protected rights.

**COUNT VIII – ABUSE OF PROCESS**
**(Olivia and Timothy Tipton against Defendants Hallas and Herald)**

362. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

363. In publicly criticizing the District on Facebook, among other things, Plaintiffs were engaged in conduct protected by the First Amendment to the United States Constitution.

364. In advocating for their children, students with disabilities, Plaintiffs were engaged in conduct protected by Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.

365. In response to the Plaintiffs' engaging in legally protected activities, Defendant Hallas initiated, and Defendant Herald authorized, acquiesced, or ratified, the Request for Due Process Hearing against Plaintiffs on May 8, 2026.

366. The Due Process proceedings instituted by Hallas and authorized or ratified by Herald were done so in the absence of probable cause; they did not relate in any way to the educational services and accommodations to be provided by the District to Plaintiffs' children, students with disabilities.

367. The Request for Due Process Hearing related exclusively to the legally protected conduct of Plaintiffs.

368. Defendants sought an order from the Kentucky Department of Education requiring the Plaintiffs to remove their Facebook posts regarding the District.

369. Defendants sought an order from the Kentucky Department of Education barring Plaintiffs from further advocacy for their children.

370. Defendants sought an order from the Kentucky Department of Education barring Plaintiffs' Advocate from appearing at subsequent ARC meetings.

371. Defendants weaponized Due Process proceedings against the Plaintiffs for an improper purpose.

372. Defendants weaponized Due Process proceedings against the Plaintiffs with malice, and without justification.

373. Defendants weaponized Due Process proceedings against the Plaintiffs in retaliation for their exercise of their constitutionally and statutorily protected conduct.

374. As a direct and proximate result of Defendants' abuse of process, Plaintiffs suffered damages in the form of reputational harm, emotional distress, violations of their rights, undue costs and attorneys fees, and undue burden on their right to advocate for their children.

**COUNT IX – WRONGFUL USE OF CIVIL PROCEEDINGS**
**(Olivia and Timothy Tipton against Defendants Hallas and Herald)**

375. Plaintiffs restate and incorporate by reference each of the foregoing allegations as if fully set forth herein.

376. In publicly criticizing the District on Facebook, among other things, Plaintiffs were engaged in conduct protected by the First Amendment to the United States Constitution.

377. In advocating for their children, students with disabilities, Plaintiffs were engaged in conduct protected by Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.

378. In response to the Plaintiffs' engaging in legally protected activities, Defendant Hallas initiated, and Defendant Herald authorized, acquiesced, or ratified, the Request for Due Process Hearing against Plaintiffs on May 8, 2026.

379. The Due Process proceedings instituted by Hallas and authorized or ratified by Herald were done so in the absence of probable cause; they did not relate in any way to the educational services and accommodations to be provided by the District to Plaintiffs' children, students with disabilities.

380. The Request for Due Process Hearing related exclusively to the legally protected conduct of Plaintiffs.

381. Defendants sought an order from the Kentucky Department of Education requiring the Plaintiffs to remove their Facebook posts regarding the District.

382. Defendants sought an order from the Kentucky Department of Education barring Plaintiffs from further advocacy for their children.

383. Defendants sought an order from the Kentucky Department of Education barring Plaintiffs' Advocate from appearing at subsequent ARC meetings.

384. Defendants weaponized Due Process proceedings against the Plaintiffs for an improper purpose.

385. Defendants weaponized Due Process proceedings against the Plaintiffs with malice, and without justification.

386. Defendants weaponized Due Process proceedings against the Plaintiffs in retaliation for their exercise of their constitutionally and statutorily protected conduct.

387. As a direct and proximate result of Defendants' abuse of process, Plaintiffs suffered damages in the form of reputational harm, emotional distress, violations of their rights, undue costs and attorneys fees, and undue burden on their right to advocate for their children.

**WHEREFORE**, Plaintiffs demand Judgment against Defendants as follows:

a. A declaration that Defendants violated Plaintiffs' rights under the First Amendment, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973;

b. Compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial;

c. Punitive damages against Defendants Parrott, Keil, Hallas, and Herald, all in their individual capacities, based on the allegations in Counts I, VIII, and IX;

d. Injunctive relief requiring the District to allow written parent addenda to ARC conference notes, to provide draft notes in writing before approval, to use video for school staff at remote ARC meetings, and to restore parent participation to Buckner Elementary SBDM Committees;

e. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. 794a;

f. Pre- and post-judgment interest;

g. A trial by jury on all issues so triable; and

h. All other relief to which Plaintiffs may appear entitled.

Respectfully submitted,

*/s/ Randy J. Blankenship*

Randy J. Blankenship (# 81924)
Ziegler & Schneider, P.S.C.
541 Buttermilk Pike, Suite 500
PO Box 175710
Crescent Springs, KY 41017
PH: (859) 426-1300
rblankenship@zslaw.com
*Attorney for Plaintiffs*